FRANK ZORRILLA, SECRETARY OF LABOR OF THE COMMON-WEALTH OF PUERTO RICO, ETC., Plaintiff and Appellee, *v.* ANTILLES WOOD INDUSTRIES, INC., Defendant and Appellant.

No. R-68-161.        Decided May 21, 1969.

*Dubón & Dubón* for appellant. *Manuel Janer Mendía* and *Rafael A. Marzand Robles* for appellee.

MR. JUSTICE RIGAU delivered the opinion of the Court.

The question raised herein is whether the work performed by plaintiffs is covered by Mandatory Decree No. 25 applicable to the lumber and wood products, metal furniture, doors and windows industry or whether said work is covered by Mandatory Decree No. 44 applicable to the construction industry.

The parties, by means of formal written stipulation, alleged the following before the Superior Court:

(a) The defendant is a domestic corporation and it is engaged in the manufacture and installation of kitchen cabinets.

(b) The principal activity of defendant consists in the mass production of said cabinets and in the installation of the same in large scale construction projects. In the sale contracts of that equipment defendant includes in the price the installation of the cabinets in the houses or business premises indicated by the customer.

(c) The cutting and painting operations of said cabinets are made at defendant's factory and the assembling and installation of the same are made at the house or business premises of the customer. The cabinets are installed by fastening them to the wall with beams, nails and screws and

with angle irons, as the case may be. The necessary adjusting operations are made while being installed since the drawings and the kitchens built do not always agree exactly.

(d) The fundamental structure of the cabinets is made of wood, but plastic, aluminum and iron fittings are also used in their manufacture and installation.

(e) That on the dates indicated in Exhibit A of the complaint the claimant workers worked in the operations of assembly and installation of kitchen cabinets in the projects which defendant had under contract and that they were paid a wage per hour in accordance with Mandatory Decree No. 25.

(f) That there exists a bona fide controversy between plaintiffs and defendant with respect to which mandatory decree, if any, is applicable to the aforesaid work performed by plaintiffs. Plaintiffs believe that the applicable decree is No. 44 and defendant believes that the applicable decree is No. 25.

(g) The parties also stipulated "that if decree number 25 to which we have previously referred were applicable, defendant would not be bound to the payment of the difference in wages which is alleged in the present claim; the parties likewise agree that defendant would owe claimant workers the amount claimed in the complaint if decree number 44 were applicable."

The wages claimed were earned on account of work performed between September 6, 1960 and March 31, 1963. Therefore, we shall resort to the provisions of the decrees in force during that period. These are Mandatory Decree No. 25, First Revision (1959) and Second Revision (1961), and Mandatory Decree No. 44, First Revision (1960) and Second Revision (1962).

A former Mandatory Decree, No. 14, applicable to the furniture and other wood products industry defined said industry in the following way:

"The furniture and other wood products industry includes the processes of design, manufacture, *assembly,* alteration, and repair of furniture made from wood, metal, wicker, maguey or any other material; and of other wood products." (Italics ours.)

Said decree made no distinction between the assembly (*montaje*) which was performed at the factory itself and the one performed at the kitchens or business premises where the cabinets were installed. Under that Decree No. 14 it is almost sure that appellant would have been right.

However, when the Minimum Wage Board promulgated Decree No. 25, it defined the wood industry in a different way. The Board defined it as follows:

"The Lumber and Wood Products, Metal Furniture, Doors and Windows Industry: shall comprise the activities pertinent to sawmills and to planing and plywood mills and the manufacture of every product made wholly or chiefly from lumber or related materials, such as, willow, bamboo, rattan, excelsior, cork, and 'maguey'. "

"It shall also comprise the manufacture of the following products made wholly or chiefly from metal: furniture, doors, windows, and door and window frames . . . ."

■■ Note that Decree No. 25 did not include the assembly in the new definition. It was not included either in the second revision of the same decree. Of course, we cannot presume that this was due to inadvertence. The decrees on wages are technical documents which have to be drafted with precision. Precisely, the darkness which at first sight is noted in administrative regulations is due to the exactness and the detail which they often require. Considering the language of Decree No. 25, it may be said that the assembly of these cabinets made at the factory itself is a joining and it is part of the manufacturing process. But the assembly and the installation made at the building where they are installed is part of the construction and termination of the work. The cabinets may be bought at the factory and may be installed at the construction work by another person. An additional

consideration leads us unavoidably to the conclusion that the installation is covered by Decree No. 44. This consideration is that the same Decree No. 25 (in its first and second revisions) expressly provides that it does not include the activities covered by Decree No. 44 and said Decree No. 44, of that same Board, provides that the construction industry includes "the assembling or installation at the construction site of any machinery or device."

█ Before similar situations, interpreting different minimum wage decrees, this Court has consistently established the rule that what characterizes the work performed by a worker is not the work or business in which his employer is engaged but that work which the worker actually and effectively performs. *Sierra Núñez* v. *Const. Equipment Corp.*, 90 P.R.R. 136, 142 (1964); *Sec. of Labor* v. *Cementerio Cat. Porta Coeli*, 92 P.R.R. 512, 513 (1965); *Campos Encarnación* v. *Sepúlveda*, 94 P.R.R. 72, 73 (1967), and *Almodóvar* v. *Sucn. J. Serrallés*, 96 P.R.R. 9 (1968). In *Campos Encarnación* v. *Sepúlveda*, *supra*, after citing with approval the cases of *Sierra Núñez* v. *Const. Equipment Corp.*, *supra* and *Sec. of Labor* v. *Cementerio Cat. Porta Coeli*, *supra*, we stated that "the essential basis for fixing minimum wages is the nature of the service to be rendered by the employee who performs it, no matter what type of occupation the enterprise or employer employing him is engaged in . . . ."

The Court also stated in the aforesaid case of *Campos* v. *Sepúlveda*, that "Considering the remedial purpose of the minimum wage legislation . . . we have adopted as a rule that when there is doubt as to whether a decree is applicable to a certain class of employees, a restrictive interpretation excluding them from the protection it affords should not prevail."

In view of the foregoing, judgment will be rendered affirming the one rendered in this case by the Superior Court,

Bayamón Part, on April 29, 1968, by which it was decided that the applicable decree was No. 44.

Mr. Justice Hernández Matos did not participate herein.